UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENARD J. TURNER, | ) | Case No.: 1:05 CV 1327 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| GRANDE POINTE NURSING HOME, | ) | |
| | ) | |
| Defendant | ) | <u>FINDINGS OF FACT AND</u> |
| | ) | <u>CONCLUSIONS OF LAW</u> |

The within case was tried before the court on November 14, 2007. Plaintiff Renard Turner ("Plaintiff") claims that Defendant Grande Pointe's ("Defendant" or "Grande Pointe") failure to promote him to the position of Assistant Activities Director was the result of reverse gender discrimination in violation of Ohio Revised Code §§ 4112.02, 4112.99. The trial began and concluded that same day. Plaintiff's counsel called Plaintiff, and Defendant cross-examined him. Plaintiff also called his wife, Mary Ellen Gardener Turner ("Mrs. Turner"). The following witnesses were called by Defendant Grande Pointe Nursing Home ("Defendant") and cross-examined by Plaintiff: (1) Rosalind Turnage ("Turnage"), Grande Pointe's Activities Director and (2) Melissa Schaefer, Grande Pointe's Administrator. The court's Findings of Fact and Conclusions of Law, which also encompass the court's ruling on Defendant's motion for Judgment as a Matter of Law, are set forth below.

FINDINGS OF FACT

1. Grande Pointe is a residential care facility that offers both nursing services and assisted living accommodations.

2. Grande Pointe's management and employees are predominantly female. Turnage and Schaefer made the decision regarding the promotion at issue in this case.

3. Plaintiff is male.

4. Plaintiff served as an Activities Leader in Grande Pointe's Long Term Care or "nursing home" department.

5. Prior to working at Grande Pointe, Plaintiff was employed with Larchwood Place, a nursing home, as an Activities Director. Prior to working at Larchwood, Plaintiff was employed as an Activities Director for University Settlement Senior Center, a facility that is the equivalent of a "day care center" for senior citizens.

6. Plaintiff consistently earned performance reviews at Grande Pointe rating his work generally as "good" or "excellent" and sometimes even "outstanding."

7. Plaintiff won the "employee of the month" award twice during his employment at Grande Pointe.

8. During Plaintiff's tenure as Activities Leader, he received more than thirty positive "star performer" nominations from Grande Pointe management, residents, and staff.

9. Plaintiff also noticed that when female Activity Leaders took their senior residents to off-site activities or field trips, Turnage would come along herself to assist or send another Activities Leader to help. In contrast, Turnage did not provide the same assistance to Plaintiff, leaving him to manage his residents alone.

10. Plaintiff observed that Turnage would regularly socialize with Plaintiff's female peers, but she generally would not speak to him unless he spoke to her first. He also noticed that Turnage would frequently refer to his female peers by their first names, but merely referred to Turner as "he" or "him."

11. Plaintiff formally applied for the promotional opportunity of Assistant Activities Director in 2005. The Assistant Activities Director reported to the Activities Director and assisted the Director in supervising the Activities Leaders. Plaintiff shared his excitement regarding the promotional opportunity with his wife, who helped him prepare a letter to formally express his interest in the position.

12. Turnage was the interviewer for the Assistant Activities Director position.

13. Turnage interviewed Plaintiff and Sanita Phillips ("Phillips"), a female Activities Leader, for the Assistant Activities Director position. Prior to becoming an Activities Leader, Phillips had worked in Grande Pointe's dietary department.

14. Plaintiff states that Turnage and Phillips socialized at work and took long lunches together.

15. Phillips had less seniority in the Activities Department, fewer years of experience as an Activities Leader, and no outside work experience as a supervisor or director of an activities department. Phillips did not have any work experience relevant to the Assistant Activities Director position other than serving as Activities Leader. In fact, Phillips listed "bus line server" and "baker" as examples of her work experience in her 2002 application for the Activities Leader position.

16. Phillips also had a history of serious paperwork problems as documented in the "pop-up" audits.

17. Although Turner and Phillips had both been disciplined for performance and attendance violations in their tenure at Grande Pointe, Phillips had received a total of nine disciplinary write-ups based on performance and attendance issues in the year before her October 30, 2005, promotion, compared to Turner, who received three write-ups for only attendance issues during the same period.

18. According to Turnage, Plaintiff refused to take a computer test during the interview, although Turnage admitted she did not explicitly ask him to do so. Additionally, Turnage stated that Plaintiff acted in a very unprofessional manner by slouching in his chair and proclaiming that the position for which he was interviewing would be easier than his current position. In contrast, Turnage stated that Phillips wore a business suit to the interview and behaved professionally.

19. Turnage stated that Plaintiff's interview lasted approximately thirty minutes. Turnage alleged that she produced brief "contemporaneous" notes of the interview that she provided to Schaefer, Grande Pointe's Administrator. The interview notes indicate that Plaintiff behaved unprofessionally during the interview and refused to demonstrate his computer skills.

20. Plaintiff denies both of Turnage's accusations. First, Plaintiff stated that Turnage did not ask him to take any kind of "computer test" duringการ interview, nor did she otherwise imply to him that she wanted him to demonstrate his computer skills at the interview. However, Plaintiff agrees that Turnage indicated the position required some computer skills. Plaintiff maintains that he told her that he possessed these skills. Secondly, Plaintiff states that during the interview he did not slouch or state that the job would be easier than

-4-

    his current one. Finally, Plaintiff stated at trial that he believed the Assistant Activities Director position would be harder than the Activities Leader position because he would be responsible for supervising other staff and completing documentation that was not required in his current position, while still being responsible for programming with residents. The court credits Plaintiff's testimony.

21. Plaintiff stated that Turnage did not give him any advance notice of the interview, and therefore Plaintiff did not have the opportunity to wear a business suit to the interview. Plaintiff stated that the interview was extremely brief and that Turnage appeared disinterested, abrupt, and did not discuss his qualifications for the position. The court credits Plaintiff's testimony.

22. Turnage stated that, prior to Plaintiff's interview, she reviewed Plaintiff's employment application and his resume, and she was aware that he had been the Activities Director at Larchwood Place and at University Settlement. However, Turnage stated that she did not believe that these previous positions were relevant to the Assistant Activities Director position.

23. Turnage stated that she did not review Phillips's employee file prior to Phillips's interview and indeed has never seen Phillips's employee file. Later, however, Turnage stated that she saw Phillips's performance reviews for the time period when Phillips served as an Activities Leader, and Turnage believed that Phillips's evaluations were comparable to Plaintiff's.

24. Turnage stated that, although Phillips did not have any relevant work experience prior to becoming an Activities Leader, Turnage believed that Phillips was qualified for the position

   based on Phillips's Associate's Degree in Applied Business from Bryant and Stratton, which Plaintiff earned in October 2005. Turnage agreed, however, that one did not need to attend classes to learn how to use the relatively common computer applications such as Microsoft Word, Excel, and e-mail.

25. Turnage stated that she did not prepare any documentation to reflect that she had organized a standardized computer test prior to allegedly administering the computer test to Phillips or offering it to Plaintiff.

26. Turnage promoted Phillips to Assistant Activities Director effective October 30, 2005.

27. Schaefer "signed off" on Turnage's decision. Schaefer stated that she "considered everything" in upholding Turnage's decision. However, besides Turnage's contemporaneous interview notes, Schaefer could not identify any documents that might demonstrate that she made a carefully reasoned consideration of Turnage's decision to hire Phillips rather than Plaintiff. As a result, the court does not credit Schaefer's testimony that she "considered everything" when she approved Turnage's decision not to promote Plaintiff.

28. In his opening statement, Grande Pointe's counsel stated that Turnage did not discriminate against Plaintiff based on gender, and, in fact, offered the position to an outside male candidate after Turnage interviewed him and he took a computer test. However, the evidence Turnage provided at trial did not support this assertion. In fact, Turnage stated that she wanted to hire the alleged outside male candidate, but she only spoke to him briefly because the salary Grande Pointe was offering for the Assistant Activities Director was too low. Turnage stated that she did not interview the outside male applicant for the Assistant

        Activities Director position, and he did not take a computer test. Moreover, Turnage could not recall the outside male candidate's name or where he was employed. As a result, the court does not credit Turnage's testimony that her first choice for the Assistant Activities Director position was the outside male candidate.

29. Plaintiff stated that from the time he was denied the position on or about October 30, 2005, until on or about July 11, 2007, the time he involuntarily left Grande Pointe, Plaintiff suffered emotional harm based upon his belief that he had been a victim of reverse gender discrimination.

30. Specifically, Plaintiff stated that his marriage suffered as a result of isolating himself from his wife and family, that he became depressed and short-tempered, that he suffered from insomnia several times a week, that he gained weight, and that he became anxiety-ridden about continuing to work for Grande Pointe. Mrs. Turner corroborated Plaintiff's account of the mental and emotional harm Plaintiff incurred and stated that, since he began working at a new job, Plaintiff's attitude and emotional health have dramatically improved.

31. The court does not credit Plaintiff's assertion that Grande Pointe management withheld documents that were helpful to Turner's case, and that Defendant's failure amounted to a deliberate effort to frustrate Plaintiff's ability to prevail in this action.

## CONCLUSIONS OF LAW

1. To establish a prima facie case of "reverse" gender discrimination on his failure to promote claim based upon indirect evidence, Turner must show: (1) background circumstances support the suspicion that the Defendant is that unusual employer who discriminates against the majority in the work place (*i.e.*, males); (2) he was qualified for the position;

   (3) despite his qualifications, he was rejected; and, (4) the employer treated employees who were similarly-situated but not members of the protected group differently. *Zambetti v. Cuyahoga Commun. Coll.,* 314 F.3d 249, 255-56 (6th Cir. 2002).

2.  Plaintiff can establish a prima facie case of failure to promote. First, Plaintiff can show that background circumstances support the suspicion that Grande Pointe is the unusual employer who discriminates against the majority (*i.e.,* males) in the workplace because Turnage and Schaefer are female and made the promotion decision at issue here. *See Zambetti,* 314 F.3d at 257 (in reverse race discrimination case, the fact that the decision-maker was African- American is sufficient to satisfy the "background circumstances" prong). Additionally, Defendant does not dispute that its management and work force are predominantly female. Secondly, Turner demonstrated he was objectively qualified for the position based upon his education, relevant outside work experience, positive performance reviews, awards, and commendations. *See Wexler v. White's Furniture, Inc.,* 317 F.3d 564, 575-76 (6th Cir. 2003) (*en banc*). Third, Plaintiff was denied the Assistant Activities Director position. Finally, the position was given to Phillips, a similarly-situated female employee.

3.  Since Plaintiff has established a prima facie case, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for failing to promote Plaintiff. *Zambetti,* 314 F.3d at 257. This burden is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 142 (2000) (citation omitted). Defendant met its burden by offering admissible evidence that the reason it did not promote Plaintiff was that he behaved unprofessionally at his interview and refused to

          take a computer test. It also offered evidence at trial that another legitimate, non-discriminatory reason for not promoting Plaintiff was that Phillips was the more qualified applicant.

4.     The burden then shifts back to Plaintiff to demonstrate that Defendant's proffered reasons are pretext for discrimination. *Wexler,* 317 F.3d at 576. To show pretext, Plaintiff must demonstrate that "the proffered reason: (1) has no basis in fact; (2) did not actually motivate [Defendant's] challenged conduct; or (3) was insufficient to warrant the challenged conduct." *Id.* (citation omitted).

5.     Plaintiff first argued that Defendant's proffered reason that Plaintiff behaved unprofessionally during the interview and refused to take a computer test is pretext because it has no basis in fact. That is, Plaintiff introduced "evidence that the proffered bases for [his] discharge never happened, *i.e.*, that they are 'factually false.'" *Macy v. Hopkins County Sch. Bd. of Educ.,* 484 F.3d 357, 366 (6th Cir. 2007) (citation omitted). Here, the court finds that Defendant's proffered reason is pretextual because it has no basis in fact. Turnage's explanation that Plaintiff behaved inappropriately during the interview and remained awkwardly silent when Turnage half-invited him to demonstrate his computer skills is not credible in light of the evidence that Plaintiff was genuinely enthusiastic about the job. Moreover, the brevity of the "contemporaneous notes" actually support Plaintiff's contention that the interview was extremely brief, rather than Turnage's assertion that she devoted an entire half hour to Plaintiff's interview. Finally, the court finds that Defendant's assertion that an outside male candidate was the preferred candidate for the position is unbelievable because Turnage did not interview him or ask him to take a

      computer test, and Turnage cannot remember the outside male candidate's name or where he worked.

6. To the extent that Defendant also proffers its belief that Phillips was more qualified for the position than Plaintiff as a legitimate, non-discriminatory reason for its failure to promote Plaintiff, the court finds that this reason is pretextual. The court finds that Plaintiff was objectively more qualified than Phillips based on his prior relevant work experience and primarily positive performance reviews in comparison with Phillips's limited work experience, demonstrated difficulty with maintaining appropriate documentation, and multiple disciplinary write-ups that occurred in the year before the promotion.

7. The court therefore denies Defendant's motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a), finding that a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiff on his failure to promote claim. As the court held in *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 137 (2000), Plaintiff has put forth evidence to support his prima facie case as well as sufficient evidence for the court as trier of fact to disbelieve Defendant's legitimate, non-discriminatory explanation for its action. Consistent with *Reeves,* the court finds that Defendant is not entitled to judgment as a matter of law.

8. Further, the court finds, as the trier of fact, that judgment in favor of Plaintiff is appropriate based on the court's factual determinations as discussed above and Conclusions of Law as set out herein. The court finds that Defendant's failure to promote Plaintiff was based on intentional, reverse discrimination. In *St. Mary's Honor Center,* 509 U.S. 502, 511 (1993), the Court held that "rejection of the defendant's proffered reasons will *permit* the trier of

fact to infer the ultimate fact of intentional discrimination" but does not compel a finding of discrimination. The Sixth Circuit stated that *Reeves,* 530 U.S. at 146-49, "clarified that the fact finder's belief in the intentional-discrimination explanation can be based on the evidence supporting the prima facie case as well as evidence discrediting the employer's proffered rationale; the plaintiff need not produce any additional evidence." *Blair v. Henry Filters, Inc.,* No. 05-2437, 2007 U.S. App. LEXIS 24091, at *39 (6th Cir. Oct. 15, 2007). Here, the court's belief that Plaintiff was intentionally discriminated against is based on evidence supporting his prima facie case such as his objective qualifications for the position, as well as the evidence that, as discussed above, discredits Defendant's proffered explanations for its decision not to promote Plaintiff. Moreover, Defendant's contention that Turnage treated him differently than his female counterparts prior to the promotion decision (*i.e.,* not providing him with supplies in a timely manner, not providing him with assistance on outings with residents that was provided to female Activity Leaders, socializing with female employees at work but not socializing with Plaintiff), also buttresses the court's finding that Grande Pointe's decision not to promote Plaintiff was based on intentional reverse discrimination.

9. As shown in the chart below, Plaintiff is entitled to lost wages of $3,677.52 due to Defendant's failure to promote him to the Assistant Activities Director position.

| Time Period | Weekly Pay Difference Between Turner and Phillips | Number of Weeks | Turner's Total Loss for Time Period |
|---|---|---|---|
| 10/30/05 - 4/23/06 | $43.25/week | 25 weeks | $1,081.25 |

| 4/24/06-10/29/07 | $32.38/week | 27 weeks | $874.26 |
|---|---|---|---|
| 10/30/07 - 5/12/07 | $48.37/week | 28.8 weeks | $1,393.06 |
| 5/13/07-7/10/07 | $38.25 week | 8.6 weeks | $328.95 |
| | | Total wage loss | $3,677.52 |

10. The court finds that Plaintiff is also entitled to damages for mental and emotional distress. Damages for mental and emotional distress "will not be presumed, and must be proven by 'competent evidence.'" *Moorer v. Baptist Mem. Health Care Sys.,* 398 F.3d 469, 485 (6th Cir. 2005) (citations omitted). However, emotional injury may be proved without medical support, and "a plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard.'" *Id.* (citation omitted). Similar to the plaintiff in *Moorer,* both Plaintiff and his wife provided evidence that Plaintiff's marriage suffered as a result of Plaintiff isolating himself from his wife and family, that Plaintiff suffered from insomnia several times a week, that he became depressed and short-tempered, that he gained weight, and that he became anxiety-ridden about continuing to work for Grande Pointe. Accordingly, the court consequently finds that Plaintiff proved by competent evidence that he suffered emotional injury as a result of Defendant's intentional reverse discrimination, and the court awards him $5,000 in emotional damages.

11. The court finds that Plaintiff is not entitled to punitive damages. The purpose of punitive damages is "not to compensate a plaintiff, but to punish and deter certain conduct." *Moskovitz v. Mt. Sinai Med. Ctr.,* 635 N.E.2d 331, 343 (Ohio 1994). Punitive damages are

only available under Ohio law in employment discrimination cases if there is a "finding of actual malice" by clear and convincing evidence. *McCombs v. Meijer, Inc.,* 395 F.3d 346, 355 (6th Cir. 2005) (citation omitted). Actual malice can be found under two circumstances: "(1) if a person acts with hatred, ill will, or revenge; or, (2) if a person acts with "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at 355 (citation omitted). To meet the second definition, "the person must 'possess knowledge of the harm that might be caused by his behavior' and, nevertheless, 'consciously disregard[] the injured party's rights or safety.'" *Id.* at 355-56 (citation omitted). The court finds that Plaintiff has not shown by clear and convincing evidence that Defendant acted with a conscious disregard for his rights, and that this conscious disregard had a great probability of causing substantial harm. *Cf. Morgan v. New York Life Ins. Co.,* 507 F. Supp. 2d 808, 822-23 (N.D. Ohio 2007) (awarding punitive damages because the plaintiff offered a plethora of direct and indirect evidence substantiating his discrimination claim); *Moskovitz v. Mt. Sinai Med. Ctr.,* 635 N.E.2d at 343 (affirming punitive damages award based upon proof that the defendant doctor falsified medical records in an effort to avoid liability for the plaintiff's wrongful death).

## CONCLUSION

The court concludes by a preponderance of the evidence that Defendant intentionally discriminated against Plaintiff in violation of Ohio Rev. Code §§ 4112.02, 4112.99 when it failed to promote him to the position of Assistant Activity Director. Accordingly, Plaintiff is entitled to lost wages in the amount of $3,677.52. The court also finds that Plaintiff produced competent evidence that he suffered emotional injury as a result of Defendant's discrimination against him, and

Plaintiff is entitled to $5,000 in emotional damages.  The court finds that Plaintiff did not meet his burden of showing by clear and convincing evidence that he is entitled to punitive damages.

Accordingly, Plaintiff, Renard J. Turner, is entitled to judgment against Defendant, Grande Pointe Nursing Home, in the total amount of $8,677.52 with interest from the date of judgment.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*<br>UNITED STATES DISTRICT JUDGE

December 11, 2007